RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division
BRIAN C. TOTH
Trial Attorney
Natural Resources Section
Environment and Natural Resources Division
United States Department of Justice
Environment & Natural Resources Division
P.O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0639
Facsimile: (202) 305-0506

Attorneys for Defendant Rural Utilities Service

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, KENTUCKY ENVIRONMENTAL FOUNDATION, and SIERRA CLUB,<br><br>Plaintiffs,<br><br>v.<br><br>RURAL UTILITIES SERVICE, a federal agency within the United States Department of Agriculture,<br><br>Defendant. | Civ. No. 08-cv-1240-EMC<br><br>Date: June 11, 2008<br>Time: 10:30 a.m.<br>Honorable Edward M. Chen<br>Courtroom C, 15th Floor |

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO TRANSFER VENUE AND MEMORANDUM IN SUPPORT**

**NOTICE OF MOTION AND MOTION TO TRANSFER VENUE**

PLEASE TAKE NOTICE that on June 11, 2008, at 10:30 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of Magistrate Judge Edward M. Chen of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Rural Utilities Service will move this Court, pursuant to 28 U.S.C. § 1404(a) and Local Civil Rule 3-2(f), to transfer this case to the United States District Court for the District of Columbia, or alternatively, the Eastern District of Kentucky.

The grounds for this motion are that the case should be transferred based on the location of the events at issue for the convenience of the parties and the witnesses, and in the interests of justice. The motion will be based upon the supporting Memorandum of Points and Authorities, the Declaration of James Newby ("Newby Declaration"), the Declaration of Brian C. Toth ("Toth Declaration") and attached exhibits, and upon such further evidence and oral argument as may be presented at the hearing. Defendant's undersigned counsel has conferred with counsel for Plaintiffs, who oppose this motion.

**SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Pursuant to 28 U.S.C. § 1404(a) and Local Civil Rule 3-2(f), Defendant hereby moves to transfer this case to the United States District Court for the District of Columbia or, alternatively, the Eastern District of Kentucky, on the grounds that the case could have been brought in those courts originally, and because transfer is in the interest of justice and would not inconvenience the parties.

## II. LEGAL BACKGROUND

### A. The Rural Electrification Act

The Rural Electrification Act of 1936, ch. 432, 49 Stat. 1363 (May 20, 1936) (codified as amended at 7 U.S.C. § 901 *et seq.*) ("RE Act"), authorizes the Secretary of Agriculture ("Secretary") to make loans for the purpose of "furnishing and improving electric . . . service in rural areas," and for the purpose of assisting electric borrowers to implement demand side management, energy conservation programs, and renewable energy systems. 7 U.S.C. § 902(a). The Rural Utilities Service ("RUS") was established in 1994 to carry out the electric program under the RE Act. *See* Fed. Crop Insur. Reform &

Dep't of Agric. Reorg. Act of 1994, Pub. L. No. 103-354, § 232(c)(1), 108 Stat. 3178, 3219 (codified as 7 U.S.C. § 6942).[1]/ Under the RE Act, the Secretary–acting through RUS–is authorized to make loans for "financing the construction and operation of generating plants, electric transmission and distribution lines or systems for the furnishing and improving of electric service to persons in rural areas . . . ." 7 U.S.C. § 904.[2]/

**B. The National Environmental Policy Act**

The National Environmental Policy Act ("NEPA") is intended to foster better decision-making and informed public participation for actions that affect both people and the natural environment. See 42 U.S.C. § 4321; 40 C.F.R. § 1501.1. NEPA establishes procedures by which agencies must consider the environmental impacts of their actions but does not dictate the substantive results. Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 350 (1989). "Because NEPA is essentially a procedural statute, an agency's actions under NEPA are generally reviewed to determine if the agency observed the appropriate procedural requirements." Northcoast Envtl. Ctr. v. Glickman, 136 F.3d. 660, 665 (9th Cir. 1998). Under NEPA, federal agencies must prepare a detailed Environmental Impact Statement ("EIS") for major federal actions "significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C)); see 40 C.F.R. § 1508.11.[3]/ To determine whether an action requires an EIS, the agency may prepare an environmental assessment ("EA"). 40 C.F.R. § 1501.4(b). An EA is a "concise public document" that briefly describes the proposal, examines alternatives, considers environmental impacts, and provides a listing of individuals and agencies consulted. 40 C.F.R. § 1508.9. If a finding of no significant impact ("FONSI") is made after the matter is adequately analyzed in an EA, then an EIS is not required. See Salmon River Concerned Citizens v. Robertson, 32 F.3d 1346, 1356 (9th Cir. 1994); see also Native Ecosystems Council v. U.S. Forest Serv., 428 F.3d 1233, 1239 (9th Cir. 2005).

---

[1]/ Prior to 1994, the electric programs under the RE Act were administered by RUS's predecessor, the Rural Electrification Administration, an agency originally created through Executive Order by President Franklin D. Roosevelt in 1935. *See* Exec. Ord. No. 7037 (May 11, 1935).

[2]/ RUS also carries out a telephone program authorized by the RE Act, and water and waste facility programs authorized by the Consolidated Farm and Rural Development Act and other authorities. See 7 U.S.C. § 6942(c)(2). None of those programs are at issue in this case.

[3]/ Regulations that the Council on Environmental Quality ("CEQ") promulgated, 40 C.F.R. §§ 1500-1508, provide guidance for implementation of NEPA, and are entitled to substantial deference. Methow Valley, 490 U.S. at 355.

## III. FACTUAL BACKGROUND

In June 2006, RUS published a notice of intent to hold public meetings and prepare an EA for possible financing to East Kentucky Power Cooperative ("East Kentucky") for 35 miles of 345 kilovolt ("kV") transmission line originating at the J.K. Smith Power Station ("Smith Plant") in Clark County, Kentucky, and terminating at a switching station near Lancaster, Kentucky. See 71 Fed. Reg. 37038 (June 29, 2006). The proposed transmission line would require a 150-foot right of way and would be located in Clark, Madison, and Garrard counties, Kentucky. Id. at 37039. RUS invited written comments on the scope of the EA to be submitted for about 40 days. Id. On July 11, 2006, RUS held a public scoping meeting in Richmond, Kentucky. See 72 Fed. Reg. 53526 (Sept. 19, 2007). As a result of that meeting and two additional open house meetings held by East Kentucky, RUS received about 117 comments, which were subsequently addressed in the EA. Id.

In June 2007, RUS published a notice of availability of an EA for possible financing to East Kentucky for the 35-mile transmission line, as well as the construction of two natural gas-fueled combustion turbine generating units ("CTs") at the Smith Plant, and two new electric switching stations–one at the Smith Plant and one in western Garrard County, Kentucky (collectively, "Projects"). 72 Fed. Reg. 35031 (June 26, 2007). The alternatives considered for the CTs included: (a) no action; (b) alternative sources of power; (c) conservation and interruptible load service; (d) renewable energy sources; (e) non-renewable energy sources; and (f) alterative sites. See id. at 35032. Alternatives for the transmission line and switching stations included: (a) no action; (b) placing the line underground; (c) electrical alternatives; (d) alternate routes; and (e) alternate switching stations. See id. RUS invited public comments on the EA for 30 days, until July 26, 2007. Id.

On September 19, 2007, RUS published a notice that it had reached a FONSI regarding the environmental effects for the Projects. See 72 Fed. Reg. at 53526. RUS determined that the Projects would not have a significant impact to water quality, wetlands, the 100-year flood plain, land use, aesthetics, transportation, or human health and safety. See id. RUS also concluded that the Projects would not likely affect federally listed threatened and endangered species or designated critical habitat. See id. No other potentially significant impacts on the environment were identified. See id. Based upon the FONSI, RUS decided that the Projects did not require preparation of an EIS. See id. at 53527.

## IV. ARGUMENT

### A. The Court Has Broad Discretion to Transfer this Case under 28 U.S.C. § 1404(a)

This Court has the authority under 28 U.S.C. § 1404(a) to transfer this case to the District of Columbia or, alternatively, the Eastern District of Kentucky. Section 1404(a) states that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The Court has broad discretion to adjudicate a motion to transfer venue. See Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000); Inherent.com v. Martindale-Hubbell, 420 F. Supp. 2d 1093, 1098 (N.D. Cal. 2006).

District courts use a two-step analysis to determine whether a case should be transferred. First, the Court considers whether the case could have been brought in the forum to which transfer is sought. 28 U.S.C. § 1404(a); see Hatch v. Reliance Ins. Co., 758 F.2d 409, 414 (9th Cir. 1985); Inherent.com, 420 F. Supp. 2d at 1098. Second, the Court makes an "individualized case-by-case consideration of convenience and fairness." Jones, 211 F.3d at 498. Both factors support transfer of this case.

### B. This Case Could Have Been Brought in Two Other Judicial Districts

The only limitation on the Court's discretion to transfer a case under 28 U.S.C. § 1404(a) is the requirement that the new forum be a "district or division where [the case] might have been brought." Where the case "might have been brought" is determined by 28 U.S.C. § 1391(e), which provides that in suits against agencies of the United States, venue is proper in "any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred . . . or (3) the plaintiff resides . . . ." Id. Because all of the claims in this case could have been brought in the District of Columbia or the Eastern District of Kentucky, transfer of Plaintiffs' claims to either judicial district is proper.

#### 1. This Case Could Have Been Bought in the District of Columbia

Plaintiffs here might have properly brought their claims in the District of Columbia on several bases under 28 U.S.C. § 1391(e). Plaintiffs challenge an EA, FONSI, and decision to provide financing for the construction of two combustion turbine electric generating units ("CTs"), two switching stations, and a 36-mile, 345 kV electric transmission line. See Pls.' Compl. ¶ 3. As explained in the declaration submitted by RUS's Assistant Electric Program Administrator, the FONSI was prepared and issued in

the District of Columbia. See Newby Decl. ¶ 10. Additionally, RUS's independent review and analysis of the Projects' environmental impacts was conducted by RUS's environmental staff, also in the District of Columbia. Id. Any decisions by RUS regarding whether to provide financing for the Projects will be made in the District of Columbia. Id. ¶ 12. Suit therefore could have been brought in the District of Columbia on the grounds that "a substantial part of the events or omissions giving rise to the claim occurred" there. 28 U.S.C. § 1391(e)(2).

This case also could have been brought in the District of Columbia under 28 U.S.C. § 1391(e)(1), as the judicial district where Defendant "resides." The NEPA process for the challenged Projects was overseen by RUS's environmental staff, whose offices are located in the District of Columbia.[4] See Newby Decl. ¶ 10; see also id. ¶ 2. The office of the Assistant Administrator for Electric Programs, who signed the FONSI, is also located in the District of Columbia. Id. ¶ 3. RUS therefore "resides" in the District of Columbia, making suit in that judicial district appropriate under 28 U.S.C. § 1391(e)(1). See Nestor v. Hershey, 425 F.2d 504, 521 n. 22 (D.C. Cir.1969) ("'Where a public official is a party to an action in his official capacity he resides in the judicial district where he maintains his official residence, that is where he performs his official duties.'") (quoting 1 J.W. Moore, Federal Practice ¶ 0. 142 [5.-2] (1964)); see also Ernst v. Sec'y of Interior, 244 F.2d 344, 345 (9th Cir. 1957) (Secretary of Interior and Solicitor of Department of the Interior reside in District of Columbia); Williams v. United States, 2001 WL 1352885, at *1 (N.D. Cal. Oct. 8, 2001) (noting that venue for suits against federal agencies was proper in the District of Columbia, based upon federal agencies' residence). In sum, this case could have been brought in the District of Columbia under 28 U.S.C. § 1391(e)(1) or 28 U.S.C. § 1391(e)(2).

---

[4] As allowed by regulation, the challenged EA was prepared by a consultant for East Kentucky, with oversight and independent review by RUS. See 40 C.F.R. § 1506.5(b); 7 C.F.R. §§ 1794.10, 1794.41.

**2. Alternatively, This Case Could Have Been Bought in the Eastern District of Kentucky**

Plaintiffs could have properly brought their claims in the Eastern District of Kentucky. Under 28 U.S.C. § 1391(e)(2), venue is proper in any judicial district where "a substantial part of property that is the subject of the action is situated." Id. Plaintiffs challenge RUS's proposed decision to provide financing for the construction of CTs, switching stations, and transmission lines located in Clark, Madison, and Garrard Counties, Kentucky (Pls.' Compl. ¶ 3) – all counties within the Eastern District of Kentucky. See 28 U.S.C. § 97(a). Because the case could have been brought in the Eastern District of Kentucky under 28 U.S.C. § 1391(e)(2), the Court has power to transfer the case there. See 28 U.S.C. § 1404(a).

**C. The Interests of Justice and Convenience to the Parties Weigh in Favor of Transfer**

The factors a court considers in deciding whether the court should grant a transfer motion are where the operative facts occurred, the convenience of the parties, the convenience of the witnesses, the relative ease of access to the sources of proof, the plaintiff's choice of forum, a forum's familiarity with governing law, trial efficiency, and the interests of justice. Jones, 211 F.3d at 498; see United States v. Covenant Care, Inc., 1999 WL 760610 at *1 (N.D. Cal. Sept. 21, 1999) (transferring case to Eastern District of California for convenience of the witnesses and parties and because all the events giving rise to suit occurred in Eastern District); Garcia v. Allstate Ins. Co., 1996 WL 601689 at *1 (N.D. Cal. Oct. 9, 1996) (same); see also Nat'l Computer Ltd. v. Tower Indus., Inc., 708 F. Supp. 281 (N.D. Cal. 1989) (transferring case to Central District of California for convenience of witnesses and because the dispute does not involve a controversy of particular interest to the Northern District); Bell v. U.S. Forest Serv., 385 F. Supp. 1135, 1137 (N.D. Cal. 1974).

Where the operative facts did not occur in plaintiffs' chosen forum and the forum does not have a particular interest in the parties or the dispute, then plaintiffs' choice of forum is entitled to minimal consideration. Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987); Florens Container v. Cho Yang Shipping, 245 F. Supp. 2d 1086, 1092 (N.D. Cal. 2002) (citing Pac. Car & Foundry Co. v. Pence, 403 F.2d 949, 954 (9th Cir. 1968)). Indeed, if the plaintiffs' choice of forum is a result of forum shopping, it may be entirely disregarded. Alltrade, Inc. v. Uniweld Prods., Inc., 946 F.2d 622, 628 (9th Cir. 1991).

Other than Plaintiffs' choice of forum--which is given considerably less weight here because the challenged activities did not occur in this judicial district--all of the factors here support transfer, either to the District of Columbia or, alternatively, the Eastern District of Kentucky.

**1. The Interests of Justice Favor Transfer**

**a. The Interests of Justice Support Transfer to the District of Columbia**

The interests of justice support transfer to the District of Columbia. RUS's independent environmental review of the Projects was conducted in the District of Columbia. See Newby Decl. ¶ 10. Any decisions by RUS to provide financing for the Projects will occur in the District of Columbia, which is the location where all such decisions by RUS are made. See id. ¶¶ 11, 12, 13. By contrast, RUS's Electric Program does not have any employees in California. Id. ¶ 4. RUS also does not have any generation and transmission borrowers in California. See id. ¶ 7.[5]/ Nor does RUS have any active electric distribution borrowers serving any counties in the Northern District of California. See id. ¶ 8.

Aside from the present lawsuit, the other two most recent NEPA lawsuits against RUS were filed in the District of Columbia. See Sierra Club v. U.S. Dep't of Agric. Rural Utils. Serv., Civ. No. 07-1860-EGS (D.D.C. Oct. 16, 2007); Montana Envtl. Info. Ctr. v. Rural Utils. Serv., Civ. No. 07-1311-JR (D.D.C. July 23, 2007). All three of these recently-filed cases have included Sierra Club as a plaintiff. See Toth Decl., Attach. A (Montana Envtl. Info. Ctr., Pls.' Compl.); id., Attach. B (Sierra Club, Pls.' Compl.). The challenged projects in those cases are located in Kansas and Montana, respectively. See Toth Decl., Attach. A, ¶ 2; id., Attach. B, ¶¶ 1, 2.[6]/

There is nothing peculiar to the present case that makes venue in the District of Columbia less appropriate than in either Sierra Club or Montana Environmental Information Center. None of the underlying events in this case occurred in the Northern District of California. Rather, like the other two cases, the decision-making in this case occurred at RUS's offices in the District of Columbia, where both RUS's environmental staff and RUS's Assistant Administrator reside. See Newby Decl. ¶¶ 10, 12; see

[5]/ RUS provides financing both to generation and transmission borrowers, and also to distribution borrowers. See Newby Decl. ¶ 6. Generation and transmission borrowers generate or otherwise supply electricity and transmit it to its member distribution systems. Id. Distribution borrowers provide electricity directly to retail consumers homes and businesses. Id.

[6]/ A joint stipulation for dismissal was filed in Montana Environmental Information Center on March 20, 2008, and that lawsuit is therefore no longer pending.

also id. ¶¶ 2, 3. Reportedly, Sierra Club is engaged in a campaign of litigation against every new coal-fired plant in this country. See Toth Decl., Attach. C (reporting statement by Sierra Club's attorney that "We hope to clog up the system"). Because venue in the District of Columbia is no less appropriate in this case than in Sierra Club's only other two recent lawsuits against RUS, the interests of justice--including avoiding the appearance of forum shopping--favor transfer to the District of Columbia.

**b. Alternatively, the Interests of Justice Support Transfer to the Eastern District of Kentucky**

Alternatively, the interests of justice support transfer of this case to the Eastern District of Kentucky, which is the location of the combustion turbines, transmission line, and switching stations that are the subject of the environmental documentation challenged in this case.

"Land is a localized interest because its management directly touches local citizens." S. Utah Wilderness Alliance v. Norton, 315 F. Supp. 2d 82, 88 (D.D.C. 2004). The local interest in having land management decisions heard in the jurisdiction where the land is located is a significant element in deciding whether the interests of justice favors transfer. See Coffey v. Van Dorn Iron Works, 796 F.2d 217, 221 (7th Cir. 1986) (interest of justice may be determinative); Chrysler Capital Corp. v. Woehling, 663 F. Supp. 478, 483 (D. Del. 1987); see also Sierra Club v. Flowers, 276 F. Supp. 2d 62, 71 (D.D.C.2003) (granting motion to transfer suit involving Florida Everglades in part because of the "depth and extent of Florida's interest"). In some instances, the "interest of justice may be decisive in ruling on a transfer motion *even though the convenience of the parties and witnesses point in a different direction.*" 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3854 (2d ed. 1986) (emphasis added).

In matters of environmental law and land use decisions such as those involved here, disputes "should be resolved in the forum where the people 'whose rights and interests are in fact most vitally affected by the suit . . . .'" Trout Unlimited v. U.S. Dep't of Agric., 944 F. Supp. 13, 19 (D.D.C. 1996). As the Supreme Court has stated,

> In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. *There is a local interest in having localized controversies decided at home.*

Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509 (1947) (emphasis added).

In this case, the residents of the Eastern District of Kentucky have a "compelling interest . . . in having this localized controversy decided at home." Trout Unlimited, 944 F. Supp. at 19; see also Ctr. for Biological Diversity & Pac. Env't v. Kempthorne, 2007 WL 2023515, at *6 (N.D. Cal. July 12, 2007) (transferring case to Alaska because the challenged decision authorizing "incidental take" of polar bears and Pacific walrus as part of industrial oil and gas activities in Alaska was one in which Alaska and its residents have a "great interest"); Citizen Advocates for Responsible Expansion, Inc., v. Dole, 561 F. Supp. 1238, 1240 (D.D.C. 1983) (transferring case to Texas because highway proposal was uniquely local concern). This case involves loans to a Kentucky electric cooperative for Projects located in the Eastern District of Kentucky. See Pls.' Compl. ¶ 3. The public meetings that were part of the NEPA scoping process were conducted in Kentucky, and notice of availability of the EA was published in local newspapers there. See 72 Fed. Reg. at 53526. The Eastern District of Kentucky has substantial ties to and a more particularized interest in the dispute, whereas the Northern District of California does not. The interests of justice therefore support transfer.

**2. The Convenience of the Witnesses and Parties Weigh in Favor of Transfer**

The factors of the convenience of the witnesses, ease of access to documents, and the convenience of the parties, all weigh in favor of transfer to the District of Columbia or, alternatively, the Eastern District of Kentucky. This case will be reviewed under the Administrative Procedure Act ("APA") on the basis of an administrative record. 5 U.S.C. § 706; Camp, 411 U.S. at 142. Thus, convenience of witnesses "has less relevance because this case involves judicial review of an administrative decision." Trout Unlimited, 944 F. Supp. at 18; see also Ctr. for Biological Diversity, 2007 WL 2023515, at *5. The documents that will form the administrative record are located in the District of Columbia. See Newby Decl. ¶ 14. In the event that Plaintiffs should seek preliminary injunctive relief and an evidentiary hearing were to be necessary, the RUS environmental staff members who conducted the Agency's independent environmental review in this case would be the relevant government witnesses. That staff is located in the District of Columbia. See id. ¶ 10.

Plaintiffs would not be inconvenienced by transfer to the District of Columbia or, alternatively, the Eastern District of Kentucky. "Deference to a plaintiffs' forum choice is diminished where . . .

transfer is sought to the plaintiffs' resident forum." Airport Working Group of Orange County, Inc. v. U.S. Dep't of Def., 226 F. Supp. 2d 227, 230 (D.D.C. 2002) (internal quotation marks and citation omitted); see also Pac. Car & Foundry Co. v. Pence, 403 F.2d 949, 954 (9th Cir. 1968) ("If the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration."). Two of the Plaintiffs have offices in the District of Columbia. See Pls.' Compl. ¶ 11; see also http://www.sierraclub.org/dc/ (last visited April 30, 2008); http://www.sierraclub.org/contact/ (last visited April 30, 2008). Plaintiffs also claim to have numerous members in Kentucky, and at least one of the Plaintiffs, Kentucky Environmental Foundation, has offices there. See Pls.' Compl. ¶ 11, 12, 13.

Finally, Plaintiffs would not be prejudiced if this matter were transferred. Plaintiff Sierra Club has demonstrated its willingness to sue RUS in the District of Columbia and in federal district court in Kentucky when a project is located there. Aside from this case, the two most recent NEPA lawsuits against RUS–both of which included Sierra Club as a plaintiff--were brought in the District of Columbia. See Toth Decl., Attachs. A & B. Additionally, Sierra Club sued RUS under NEPA in the late 1990s in the Western District of Kentucky to challenge an EIS that RUS had prepared for proposed financing of the expansion of a Kentucky municipality's wastewater treatment project. See Sierra Club v. U.S. Dep't of Agric. Rural Utils. Serv., 234 F.3d 1269 (6th Cir. 2000) (table). Sierra Club's past willingness to sue RUS in the District of Columbia and in Kentucky demonstrates that transfer would not cause prejudice.

Nor does the timing of this motion to transfer prejudice Plaintiffs. There have not been any substantive proceedings in this case. Plaintiffs filed their Complaint on March 3, 2008, and since that time have not filed any motions, other than applying for pro hac vice admission of Plaintiffs' counsel. (Doc. No. 2). Defendant has not yet filed an answer but intends to do so by May 2, 2008. An initial status conference has not been held but is scheduled for June 11, 2008. (Doc. No. 5). Given that this case is merely in its initial stages, Plaintiffs would not be prejudiced by a decision to transfer the case.

## V. CONCLUSION

For the foregoing reasons, the Court should transfer this case to the United States District Court for the District of Columbia or, alternatively, the Eastern District of Kentucky.

Dated: April 30, 2008

Respectfully submitted,

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division

/s/ Brian C. Toth
BRIAN C. TOTH
Trial Attorney
Natural Resources Section
Environment and Natural Resources Division
United States Department of Justice
Environment & Natural Resources Division
P.O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0639
Facsimile: (202) 305-0506

*Of counsel*:

HELEN HARRIS
Attorney
Rural Utilities Division
Office of General Counsel
United States Department of Agriculture

Attorney for Defendant Rural Utilities Service

**CERTIFICATE OF SERVICE**

I hereby certify that on April 30, 2008, I electronically filed the foregoing DEFENDANT'S NOTICE OF MOTION AND MOTION TO TRANSFER VENUE AND MEMORANDUM IN SUPPORT and attachments, with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Marianne G Dugan
mdugan@mdugan.com,mariannedugan@yahoo.com

Matthew D. Vespa
mvespa@biologicaldiversity.org

Dated: April 30, 2008

/s/ Brian C. Toth
BRIAN C. TOTH
Attorney for Defendant Rural Utilities Service

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | | |
|---|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, KENTUCKY ENVIRONMENTAL FOUNDATION, and SIERRA CLUB,<br><br>Plaintiffs,<br><br>v.<br><br>RURAL UTILITIES SERVICE, a federal agency within the United States Department of Agriculture,<br><br>Defendant. | ) | Civ. No. 08-cv-1240-EMC<br><br>Date: June 11, 2008<br>Time: 10:30 a.m.<br>Honorable Edward M. Chen<br>Courtroom C, 15th Floor |

**PROPOSED ORDER GRANTING**
**DEFENDANT'S MOTION TO TRANSFER VENUE**

This matter is before the Court on Defendant's motion to transfer venue, Plaintiffs' opposition thereto, and Defendant's reply. Having fully considered the parties' arguments, the undersigned hereby FINDS that this case could have been brought in the United States District Court for the District of Columbia originally, and that transfer there is in the interest of justice and would not inconvenience the parties. It is therefore ORDERED that Defendant's motion to transfer this case to the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1404(a) is GRANTED.

It is so ORDERED.

Dated:

______________________________
Honorable Edward M. Chen
United States Magistrate Judge